# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

All records & information contained in a rose gold/white iPhone cell phone, a black Samsung cell phone, & a black Amazon tablet more fully described in Attachment A

)
)
)
)
)
)
)

Case No. 20-MJ-100

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A.

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:
18 U.S.C. § 922(a)(6), 18 U.S.C. 922(g)(1), 18 U.S.C. § 371, 18 USC § 922 (d), and Title 21 U.S.C. 841(a)(1) and 846

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Andrew Krzeptowski, ATF Agent
Printed Name and Title

Sworn to before me and signed in my presence:
Date: 3/4/2020

_____
Judge's signature

City and State: Milwaukee, Wisconsin

William E. Duffin, U.S. Magistrate Judge
Printed Name and Title

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Andrew Krzeptowski, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property, two cell phones, one tablet and the extraction of evidence described in Attachment B.

2. I am employed with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been since 2014. As an ATF Agent, I have conducted numerous investigations involving violations of federal and state laws including violations of 18 U.S.C. § 922(a)(6), false statement(s) in the purchase of a firearm and commonly referred to as "lying and buying"; 21 U.S.C. 841(a)(1) and 846, conspiracy to possess with the intent to distribute and distributing a controlled substance; 18 U.S.C. § 922 (d), knowing sale/transfer of a firearm to a prohibited person; 18 U.S.C. § 922 (g), possession of a firearm by a prohibited person, among other firearm offenses.

3. I have had a variety of formal, informal, and on the job training in the investigation of illegal firearms possession and firearms trafficking. I have participated in the execution of search warrants in which firearms, ammunition, and controlled substances were seized. Additionally, I am familiar with the street name(s) of firearms, controlled substances, and respective related topics, as well as have knowledge of the use of money laundering to conceal ill-gotten money.

4. This affidavit is made in support of an application for a warrant to search two cell phones and a tablet, further described in Attachment A. The search will be for evidence and instrumentalities associated with violations of 18 U.S.C. § 922(a)(6), false statement(s) in the

purchase of a firearm; 18 U.S.C. 922(g)(1), felon in possession of a firearm; 18 U.S.C. § 371 conspiracy to defraud the United States; 18 USC § 922 (d), knowing sale/transfer of a firearm to a prohibited person; and Title 21 U.S.C. 841(a)(1) and 846, distributing a controlled substance.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### IDENTIFICATION OF PROPERTY TO BE SEARCHED

6. The property to be searched is two cell phones and a tablet which can be further identified as the following:

   a. Rose Gold/White Apple iPhone cell phone, Model A1661, FCC ID: BCG-E3087A, IC: 579C-E3087A (ATF inventory # 4)(target cell #1);

   b. Black Samsung cell phone, Model: SM-J260T1, FCC ID: A3LSMJ260T1, IMIE: 352475/10/791242/8 (ATF inventory #5)(target cell #2); and

   c. Black Amazon tablet, Model: SV98LN, FCC ID: 2AETF-1013 (ATF inventory #6) (target tablet#1)

7. The applied-for warrant would authorize the search and recovery of evidence particularly described in Attachment B.

### PROBABLE CAUSE

8. Bryant Brown (DOB xx/xx/1999) has had various contacts with the Milwaukee Police Department (MPD) over the years. Brown became a convicted felon in 2017 (Milwaukee County Case No. 2016-CF-004492) and has continued to be arrested by MPD for various firearm

and armed robbery offenses subsequent to that conviction. He is also a suspect in several robberies and shooting that occurred after he became a convicted felon.

**August 16, 2019, Shooting incident at 2611 N. 49th St. Milwaukee**

9.  On August 16, 2019, at approximately 5:46 PM, MPD responded to a shooting call at 2611 N. 49th St. Officers spoke to the victim, R.C.M. (DOB xx/xx/1993), who stated he was shot multiple times in the legs. R.C.M. stated he knew the subject who shot him from past encounters. R.C.M. stated the individual who shot him was V.B.'s brother. He further explained that V.B. is a friend of R.C.M. MPD detectives presented R.C.M. with a photo array to review which included Bryant Brown's photo as part of the array. R.C.M. positively identified Bryant Brown as the person who shot him. R.C.M. stated he was walking through the alley, when a dark green four-door Jeep with tinted windows pulled up next to him. R.C.M. stated he recognized the driver as Bryant Brown, who after rolling down the window, pointed a silver semi-automoatic handgun at him and shot him multiple times. MPD officers, when they responded to the shooting, recovered (3) three spent Hornady, 9mm Luger, brass cartridge cases from the scene.

**Recovery of Smith and Wesson, model SD9VE firearm bearing serial number FBH6828**

10. On the same day, August 16, 2019, at approximately 10:40 PM, MPD received a call from S.G., a citizen. S.G. reported that her brother's green Jeep Compass with Wisconsin temporary plate R63-28U (Jeep) was stolen and she found his Jeep at a Citgo gas station located at 6001 N. Teutonia, Milwaukee. MPD officers were called and they located the Jeep parked at the Citgo gas station on Teutonia, the same location that S.G. stated. Officers observed that the Jeep had a driver sitting in it and they attempted to make a traffic stop; however the vehicle fled recklessly and engaged in a high speed chase.

11. The pursuit lasted for approximately 10 miles at which point the driver exited the vehicle and fled on foot. The vehicle came to rest at 2337 N .15th St., Milwaukee. MPD officers caught the driver, Bryant Brown, hiding in the weeds near 2344 N. 15th St., Milwaukee and took him into custody. A search of the green Jeep Compass resulted in the recovery of a number of evidentiary items including, but not limited to multiple spent Hornady, 9mm Luger, brass cartridge cases, a Smith & Wesson, model SD9VE, 9mm, firearm bearing serial # FBH6828, a rose gold/white Apple iPhone cell phone (target cell #1), a black Samsung cell phone (target cell #2), and a black Amazon tablet (target tablet #1).

12. On August 17, 2019, MPD conducted an interview with Bryant Brown while he was in custody and after he had been advised of his rights. Brown admitted to fleeing from police in the green Jeep Compass. Brown stated he bought the Jeep and the gun (a Smith &Wesson) from an individual he claimed was named "Markice" on 21st and Meinecke on Tuesday August 13, 2019, for $250.00 U.S. dollars. Brown admitted to handling the Smith & Wesson, stating his finger prints would be on it. Brown described the firearm as being black and gray in color. Brown stated he fled from police because because he had a gun in the car. Brown denied being involved in the shooting of R.C.M. at 2611 N. 49th St.

**Purchase of Smith & Wesson, model SD9VE firearm bearing serial number FBH6828**

13. Your affiant reviewed ATF eTrace information for the 9mm Smith & Wesson, model SD9VE firearm bearing serial number FBH6828, which was recovered in the Jeep by MPD after the chase of the Jeep. Your affiant learned that this firearm was purchased approximately ninety-nine days prior, on May 10,2019, at a Dunham's store, Federal Firearms Licensee (FFL) # 33317357, located at 2550 S. 108th St., West Allis, Wisconsin 53227. The firearm was purchased by Akina Franklin, DOB xx/xx/1997. During this purchase, Franklin

completed various documents, including ATF Form 4473. ATF Form 4473 is a firearm purchase record required by federal law when a person purchases a firearm from a FFL. ATF Form 4473 documents specifically which firearm(s) were sold and to whom they were transferred. On the ATF Form 4473 for the purchase of the Smith &Wesson, Franklin answered "yes" to question 11(a), which stated:

> "Are you the actual transferee/buyer of the firearm(s) listed on this form? Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you."

**Purchase of a 9mm and Smith & Wesson, M&P Shield, .40 cal by Franklin**

14. Your affiant continued his investigation and found that Franklin had purchased a second firearm on May 23, 2019. This second firearm was purchased from a Dunham's store, FFL # 33907835, located at 15470 W. Beloit Rd., New Berlin, Wisconsin 53151. Specifically Franklin purchased a Smith & Wesson firearm, Model: M&P Shield, Caliber: .40, with serial #: HXC2730.

15. During the May 23, 2019 purchase, Franklin completed various documents, including ATF Form 4473. ATF Form 4473 is a firearm purchase record required by federal law when a person purchases a firearm from a FFL. ATF Form 4473 documents specifically which firearm(s) were sold and to whom they were transferred. On the ATF Form 4473 for the purchase of the Smith & Wesson firearmfirearm, Model: M&P Shield, Caliber: .40, with serial #: HXC2730 , Franklin falsely answered again "yes" to question 11(a).

16. Your affiant knows, from his training and experience that individuals who cannot legally purchase firearms as a result of previous felony conviction(s) will often recruit "straw

purchasers" to illegally obtain firearm(s) on their behalf. These "straw purchases" are often completed with the intent to conceal the true identity of the intended recipient of the firearm. These types of transactions are commonly conducted for financial gain of the "straw purchaser" or as the result of a relationship (familial, romantic, or platonic) between the previously convicted felon (or otherwise prohibited person) and the original purchaser.

17. When a firearm is recovered by law enforcement, it is generally submitted for tracing information. This tracing information can help identify the firearm's origin. Relatively short timespans between the purchase of a firearm and its ultimate recovery by law enforcement during a criminal investigation is one of the common indicators of "straw purchasing." Under these circumstances, the short "time to crime" can serve as an investigative lead into the firearm purchasing habits of a potential straw purchaser, such as Franklin. The investigation has revealed to date that Franklin was in long-term relationship with Brown and that she knew him for several years. In addition, she was intimately involved with Brown at the time she purchased the two above-described firearms.

**Interview with Akina Franklin**

18. On February 5, 2019, your affiant conducted a non-custodial interview with Franklin.

19. Franklin explained she has been friends with Brown since the 7th grade. Franklin explained she reconnected with Brown in February of 2017 via Facebook and had Brown move in with her after he was released from prison in September of 2017. Franklin explained that some time after that, she and Brown had a physical altercation, which resulted in her calling the police and Brown being incarcerated again, in April of 2018. Franklin stated she and Brown continued communicating while Brown was incarcerated and Brown moved back in with

Franklin after being released in April of 2019. Moreover, when he moved back in, they continued their intimate relationship.

20. Franklin stated she used (3) three different phone numbers to communicate with Brown over time. The three numbers were (414) 265-9974, (414) 739-1046, and (414) 364-3503.

21. Franklin stated she became aware Brown was a felon shortly prior to April of 2018 due to an incident where Brown was not allowed to travel on a plane.

22. Franklin stated Brown sold "boy," "girl," "xanx," "percs," and "weed," which she knows are different types of drugs. Your affiant knows, through his training and experience, that the following are common slang for terms for scheduled narcotics:

    a. "boy" refers to Heroin

    b. "girl" refers to Cocaine

    c. "xanx" refers to Xanax which is a brand of Alprazolam

    d. "percs" refers to Percocet which is a brand of Oxycodone with Acetaminophen

    e. "weed" refers to Marijuana

23. Franklin stated that in 2017, Brown showed her a hand-full sized package of cocaine. Franklin stated Brown and her would regularly drive, in the morning, to service Brown's narcotic customers in Franklin's car before Brown dropped Franklin off at work. He would then keep her car for his own use. Franklin explained that she observed Brown walk up to the customer's house or the customer would walk up to her vehicle and Brown would conduct a hand-to-hand narcotic transaction with them. Franklin stated Brown also passed out "testers" which she described as samples of narcotics.

24. Franklin stated that in 2018, she also witnessed Brown frequently using marijuana, oxycodone and alprazolam.

25. Franklin stated, just prior to Brown being released from prison in April of 2019, she spoke with him during recorded jail calls. Brown began to talk about wanting Franklin to buy Brown a firearm. Franklin also stated that Brown referred to guns as "smack," during some of their conversations. Your affiant knows, through his training and experience, that "smack" is a common slang term used to refer to a gun. Franklin stated she witnessed Brown using his cell phone and her laptop computer to search for firearms he was interested in having her purchase. Franklin stated she and Brown sent text messages to each other pertaining to her purchase of the firearms for him. Franklin also stated Brown showed her firearms he was interested in having on her computer.

26. Franklin stated she is not at all familiar with firearms.

27. Franklin stated Brown gambles playing dice games and frequently loses money.

28. Franklin stated that on May 10, 2019, Brown informed her she was going to purchase a firearmfirearm, that day, from Dunhams located at the 2550 S. 108th St. West Allis, Wisconsin 53227. Franklin further explained:

    a. Brown drove Franklin in her silver, 2005 Scion, hatchback to Dunhams in West Allis.

    b. Brown gave Franklin approximately $300.00 U.S. dollaers in cash to purchase the firearmfirearm and instructed her to act like they were not together while at the store.

    c. Brown walked up to Franklin while she was looking at the firearmfirearms and pointed out which one he wanted her to buy. The store representative

recommended Franklin buy another firearmfirearm instead. Brown approached Franklin again and approved the purchase of the recommend firearmfirearm, a Smith & Wesson firearmfirearm, Model: SD9VE, Caliber: 9mm, with serial #: FBH6828.

    d. Franklin did not purchase any amuniton for the Smith & Wesson.

    e. Franklin filled out the ATF form 4472 and falsely affirmed that she was purchasing the firearm for herself. Once she received the firearm from the store, she put the firearm in her back seat of her car which Brown was still driving. Franklin further stated that she and Brown got into an argument and she got out of her car. Brown drove off in Franklin's car with the gun in the back seat.

29. On May 22, 2019, Franklin stated that Brown wanted her to purchase another firearm for him firearmon the following day at the Dunhams located at 15470 W. Beloit Rd. New Berlin, Wisconsin 53151. Franklin stated Brown informed her he wanted a larger caliber firearm with a safety. Franklin stated Brown did not want to return to the same Dunhams fearing it would raise suspicion. Franklin further explained that on May 23, 2019:

    a. Brown drove Franklin in her silver, 2005 Scion, hatchback to Dunhams in New Berlin.

    b. Brown stated that she was to pay for this firearm herself. She felt, since Brown was aware she received her tax refund, he made her pay for it.

    c. Brown told her to buy a "40 with a safety." Your affiant knows, through his training and experience, that the term"40," as it relates to firearms, is a common slang term used to refer to a .40 caliber firearm.

d. Brown and Franklin both were at the store while Franklin purchased the Smith & Wesson firearm, Model: M&P Shield, Caliber: .40, with serial #: HXC2730.

e. She put the firearm in the back seat.

f. While driving back to her residence, located at 1500 W. North Ave., Apartment 102, Milwaukee, Brown opened the gun case and examined the firearm. When they arrived at Franklin's residence, Brown brought the firearm into the residence.

30. Franklin stated she witnessed Brown taking videos and pictures of the firearms she purchased for him on his phone.

31. Franklin stated Brown alwayskept one of the two firearms she purchased for him on his person. She also stated he stored the firearm he was not using in their bedroom closet. FFranklin stated she witnessed Brown taking on and off the two firearms at different times. Franklin also stated Brown was selling drugs and passing out samples to his clientele, while in possession of the firearms.

32. Franklin stated that on July 21, 2019, Brown informed her he had sold one of the guns and was planning on selling the other one sometime in the future. Franklin stated she told Brown she would report the firearms stolen, which Brown agreed was a good idea, even though they were not stolen. Franklin falsely reported the firearms stolen to Milwaukee Police Department on July 25, 2019.

33. Franklin stated that the last time she saw the 9mm firearm on Brown was on August 16, 2019. She explained that this was the day Brown was arrested following a high

speed pursuit in a stolen green Jeep, where the 9mm firearm Franklin had purchased for Brown was recovered.

34. Franklin stated she saw Brown driving the green Jeep for three to five days leading up to his arrest on August 16, 2019. Franklin stated she saw the green Jeep parked outside of her residence on multiple occasions during that time period. Franklin stated Brown informed her he got the vehicle from a drug user/client of his. Franklin stated she overheard the owner of the vehicle repeatedly calling Brown on his cell phone and asking for the Jeep to be returned.

35. Franklin stated that on August 16, 2019, Brown called her from his (414) 364-3503 cell number and told her he just robbed and got into a shootout with "Boosey." Franklin stated she knows who "Boosey" is and described him as a black male who is one of Brown's friends. Franklin stated she told Brown he should not have robbed his only friend of two years.

36. Franklin said Brown also stated he "hit" a dice game that day as well, which she understood to mean that he robbed a group of individuals playing dice. Franklin stated that Brown plays in many dice games in the street and that he often loses a great deal of money at such games.

37. Franklin stated, she heard from friends, Brown made a female named Kendra buy a gun for him. Franklin explained Brown initially did not want to return it to her when she asked for it. Franklin stated Kendra threatened to call the police, at which point Brown's mother convinced Brown to return the firearm to Kendra.

38. Your affiant has reviewed MPD reports that indicate Brown is a suspect in several shootings and robberies during which some of these firearms were used.

39. Your affiant believes that the items your affiant seeks to search may provide identifiers or other information to assist law enforcement in identifing other illegal purchasers, other firearms, and other storage locations used by Brown.

40. Your affiant is aware that evidence of street-level narcotics distribution and illegal firearm purchase, possession, and/or sales is commonly found on the dealer's cell phones. Your affiant is also aware that narcotics traffickers often take or cause to be taken photographs, video, and other visual depictions of themselves, their associates, firearms straw purchasers, their property, money, and their narcotics on their cell phones and/or on tablets. Narcotics traffickers also typically keep and maintain these photographs, video, and other visual depictions in cell phones and/or tablets located on their person or in areas where they exercise dominion and control. Additionally, your affiant knows that persons use their cell phones and/or tablets to post and view social media accounts like Facebook, as well as use other mobile applications such as ones that track location(s), provide directions, and enable communication with others to name a few.

**Criminal History of Franklin and Brown**

41. Your affiant conducted a criminal records check on Akina D. Franklin (DOB xx/xx/1997) and observed a juvenile arrest for trespassing in August of 2013, by the Milwaukee Police Department. Therefore, Franklin does not appear to have any felony convictions.

42. Affiant conducted a criminal records check on Bryant R. Brown (DOB xx/xx/1999) and observed the following arrests: a 2013 juvenile arrest for robbery with use of force by MPD; a 2014 juvenile arrest for armed robbery by MPD; a 2016 arrest for taking a vehicle without consent, resisting an officer, and fleeing police by Shorewood police; and a 2018

probation-violation arrest by MPD. Brown also has a felony conviction in January of 2017, for fleeing and eluding Police under Milwaukee County Case No. 2016CF004492.

**General Law Enforcement Knowledge Related to Criminal Activity**

43. Affiant knows that subjects involved in crimes with other subjects often need to use the cell phones to coordinate their criminal activities. Your affiant knows that subjects who traffic narcotics and/or illegally possess firearms often use their cell phones and/or tablets to take pictures of the narcotics and firearms as well as to take pictures of themselves with the narcotics and firearms.

44. Additionally, those who are prohibited from legally purchasing/possessing firearms must obtain firearms through other means, often times through a straw purchaser. A straw purchase can be described as the event where someone who can legally purchase/possess a firearm purchases a firearm on behalf of someone else. This is done in an effort to conceal the true identity of the intended recipient. Affiant is aware this is a commonly utilized technique by convicted felons who seek to obtain firearms.

45. Your affiant is aware that cell phones, tablets, and other electronic communication devices are often used by those involved in illegal activites to store information including text messages, multimedia messages, and a history of incoming and outgoing calls, contact/address book information, photographs, videos, and other data.

46. Similarly, your affiant is aware that many of those who use cell phones often will maintain a list of their contacts and their associates names, phone numbers, and other identifying information as well as communications. This information is relevant to the investigation as it will allow law to identify potential sources and/or traffickers involved in either firearms or narcotics

trafficking, assist in the identification of customers, and can be used to identify other potential co-conspirators.

47. Moreover, as law enforcement found the target cell phones and the target tablet in the green Compass Jeep, having access to the above information will assist law enforcement in identifying the user(s) or owner(s) of the cell phones and or tablet; other individuals with whom the user may have had contact, and may provide evidence of the source of any firearms involved in this investigation or the source(s) of the narcotics involved. Therefore, your affiant request that he be allowed to collect this information as part of the execution of this search warrant.

48. Your affiant is also requesting an authorized search of the two target cell phones and the target tablet to include all removable drives, cards, memory devices or similar devices attached to or contained within said cell phone and/or tablet. Your affiant is aware that cell phones frequently contain SD cards or other removable memory/storage devices upon which data, including photographs, videos, and other information, may be stored.

49. Your affiant is aware that many cell phones capture or otherwise store GPS location tracking/logging files, may provide additional evidence as to the targets' travels, and may provide evidence as to the location where the alleged illegal actions occurred. Similarly, said information may assist law enforcement with locating and identifying other subjects with whom the target was involved in related to narcotics and/or firearms trafficking, including assisting inidentifying the place or places where said illegal possession of firearms and/or narcotics may have occurred.

50. Your affiant's investigation into Bryant Brown and Akina Franklin began in September of 2019. Your affiant was unaware of the existance of the two target cell phones or

the target tablet when this investigation started. It was only after further investigation that the potential relevance of the two target cell phones and the target tablet.

## TECHNICAL TERMS

51. Based on my training and experience, I use the following technical terms to convey the following meanings:

Wireless cell phone: A wireless cell phone (or mobile cell phone, or cellphone) is a handheld wireless device used for voice and data communication through radio signals. These cellphone send signals through networks of transmitter/receivers, enabling communication with other wireless cellphone or traditional "land line" cellphone. A wireless cellphone usually contains a "call log," which records the cellphone number, date, and time of calls made to and from the cellphone. In addition to enabling voice communications, wireless cellphone offer a broad range of capabilities. These capabilities include: storing names and cellphone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless cellphone may also include global positioning system ("GPS") technology for determining the location of the device.

Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory

cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

52. Based on my training, experience, and research, I know that these cell phones and tablet have capabilities that allow them to serve as a wireless/VOIP cellphone, digital camera, GPS navigation device, portable storage, and a tablet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

53. The two target cell phones and the target tablet are presently being held as evidence at the ATF offices located at 1000 Water St. 53202. Therefore this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this

warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

54. Based on the foregoing facts and circumstances, there is probable cause to believe that Bryant Brown and Akina Franklin were involved in violations of 18 U.S.C. § 922(a)(6), providing false statement(s) in the purchase of a firearm; 18 U.S.C. 922(g)(1), felon in possession of a firearm; 18 U.S.C. § 371, conspiracy to defraud the United States; 18 U.S.C. § 922 (d), knowingly sell/transfer of a firearm to a prohibited person; and Title 21 U.S.C. 841(a)(1) and 846, distributing a controlled substance.

55. There is also probable cause to search target cell #1, target cell#2, and target tablet # 1 as described in Attachment A for evidence of these crimes, as describe in Attachment B.

# ATTACHMENT A

PROPERTY TO BE SEARCHED

The property to be searched is:

1. a Rose Gold/White iPhone cell phone, Model A1661, FCC ID: BCG-E3087A, IC: 579C-E3087 (ATF Exhibit #4) (target cell #1);

2. A Black Samsung Cell phone, Model: SM-J260T1, FCC ID: A3LSMJ260T1, IMIE: 352475/10/791242/8 (ATF Exhibit #5) (target cell #2); and

3. a Black Amazon Tablet, Model: SV98LN, FCC ID: 2AETF-1013 (ATF Exhibit #6) (target tablet #1).

The devices are in the custody of the ATF, 1000 North Water Street, Suite 1400, Milwaukee, Wisconsin.

# ATTACHMENT B

ITEMS TO BE SEIZED

1. All records and information contained in target cell #1, target cell #2, and target tablet #1 described in Attachement A which relate to violations of 18 U.S.C. § 922(a)(6), false statement(s) in the purchase of a firearm; 18 U.S.C. 922(g)(1), felon in possession of a firearm; 18 U.S.C. § 371 conspiracy to defraud the United States; 18 U.S.C. § 922 (d) knowingly sell/transfer of a firearm to a prohibited person; and distributing a controlled substance in violation of Title 21 U.S.C. 841(a)(1) and 846 that involve Bryant Brown, Akina Franklin and other known and unknown co-conspirators including, but not limited to:

    a. lists of contacts with any identifying information;

    b. photographs, videos, or other media storage connected to drugs and firearms;

    c. any stored GPS location tracking/logging files that may provide additional evidence as to the targets' travels, and may provide evidence as to the location where the alleged illegal actions occurred;

    d. types, amounts, and prices of drugs and/or firearms purchased/sold;

    e. any information related to sources or purchasers of drugs and/or firearms (including names, addresses, phone numbers, or any other identifying information);

    f. any and all codes/words used to identify either narcotics and/ or firearms;

    g. any and all financial records connected to the purchase/sale of firearms and/or drugs and/or purchasers;

    h. any evidence of proceeds of firearm and/or drug trafficking activities, including United States currency; and